## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CRIMINAL ACTION |
| | : | NO. 08-628-2 |
| v. | : | |
| | : | CIVIL ACTION |
| SALVADOR GONZALEZ | : | NO. 11-6801 |

## M E M O R A N D U M

**STENGEL, J.**                                                                                         June 11, 2012

Salvador Gonzalez filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255 asserting that he was denied his Sixth Amendment right to effective assistance of counsel. Gonzalez contends that his trial counsel "failed to diligently encourage him" to cooperate concerning a single, unidentified individual against whom he was willing to cooperate in order to obtain a lower sentencing guideline range. Gonzalez alleges that his counsel was ineffective for failing to explain to him the difference between cooperating with the government in order to qualify for safety valve relief provided in 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2, and cooperating with the government pursuant to a signed cooperation plea agreement in hopes of obtaining a downward departure pursuant to U.S.S.G. § 5K1.2. For the following reasons, I will deny Gonzalez's petition.

**I.      BACKGROUND**

On various dates during 2008, Gonzalez and another individual, Jose Ventura, met with a person cooperating with the Federal Bureau of Investigation ("the CS") to discuss purchasing a large quantity of cocaine. On September 11, 2008, the CS met with

Gonzalez and Ventura in Philadelphia, Pennsylvania and showed them a 54 kilo package (6 packages of actual cocaine and 48 packages of sham cocaine), stored in the trunk of a Toyota Camry. Gonzalez and Ventura discussed arrangements for the transaction. On the morning of September 12, 2008, the CS spoke with Ventura and agreed that the CS would sell 25 kilos of cocaine to Ventura and Gonzalez in exchange for $190,000 up front, with both Ventura and Gonzalez owing the remainder of the balance. The transaction occurred later that morning and Gonzalez, Ventura, and three other individuals were arrested. The government seized $53,000 cash. The government's evidence included hours of video and audio recordings of the CS's interactions with Ventura and Gonzalez.

On October 14, 2008, a grand jury returned an indictment charging Gonzalez and the other defendants for this conduct. Ultimately, all of the defendants pleaded guilty. Gonzalez pleaded guilty on September 9, 2009 pursuant to a written plea agreement with the government. He pleaded guilty to two counts: (1) conspiracy to possess with intent to distribute five kilograms or more of cocaine, (2) attempted possession with intent to distribute five kilograms or more of cocaine. He was represented by counsel, Robert Levant, Esquire. His written plea agreement was made pursuant to Fed. R. Crim. P. 11(c)(1)(C). In the agreement, the parties agreed upon a sentence of 120 months incarceration, five years supervised release, and a $200 special assessment. This sentence is the mandatory minimum sentence provided by statute for Gonzalez's crime absent safety valve relief.

During the change of plea hearing before this Court, I asked Gonzalez whether he had read the plea agreement and Gonzalez stated that he had read the agreement. Tr. 9/9/09, 8. Gonzalez's counsel, Mr. Levant, also stated for the record that "not only was [the plea agreement] read to Mr. Gonzalez on more than one occasion, I did have Ms. Weaver [the court interpreter] translate a copy in Spanish and I've provided a written Spanish version to Mr. Gonzalez as well -- and he received that at the FDC and reviewed that as well." Tr. 9/9/09, 7-8. Gonzalez confirmed that he read the translated copy of the plea agreement. Tr. 9/9/09, 9. Gonzalez assured me that no one had forced him to sign the agreement, no one had threatened him to sign the agreement, and no one had made any promises to him outside the terms of the agreement in order to encourage him to sign the agreement. Tr. 9/9/09, 13-14. After the government summarized the terms of the plea agreement, I asked Gonzalez if that was the agreement as he understood it, to which he replied, "Yes." Tr. 9/9/09, 12-13. I asked Gonzalez if the government's facts supporting the charges were true, and Gonzalez answered "Yes." Tr. 9/9/09, 25. After I colloquied Gonzalez and observed his demeanor, I stated:

> I find based upon this record that Salvador Gonzalez is alert, competent and capable of entering a plea of guilty. I find that he understands the Guilty Plea Agreement, and the he has voluntarily signed the Agreement. I find that he understands the rights that he has as a person accused on the crime and rights that he is waiving by entering this plea of guilty. I find that he understands the elements of the two crimes to which he is pleading guilty, that being conspiracy and attempt to possess with intent to distribute. I find that he understands the maximum penalties, the application of the sentencing guidelines and the mandatory minimum sentence that applies to his case. I believe this is a knowing and voluntary plea, and I find there is a factual basis of the plea of guilty.

Tr. 9/9/09, 29.

I scheduled sentencing for December 7, 2009. On October 27, 2009, Gonzalez wrote a letter to me stating that he did not want to plead guilty, but his lawyer had "scared me to plea" and now Gonzalez wanted to "take back" his plea. Tr. 11/19/09. On November 19, 2009, I held a hearing to discuss Gonzalez's letter. At the hearing, Gonzalez stated (through an interpreter) that on the day that he pleaded guilty, "I was mistaken" and "I had told my lawyer when I arrived in Court that day that I wasn't ready to plead guilty." Tr. 11/19/09, 7.

I asked Gonzalez's counsel if he could inform the court about his interactions with Gonzalez. Mr. Levant explained that he had "done everything possible" to answer Gonzalez's questions. Mr. Levant stated that he had discussed all of the discovery with Gonzalez and that all of the audio and video recordings had been made available to Gonzalez at the FDC. Mr. Levant explained, "I certainly can tell the court he was knowingly informed prior to the plea . . ." He further informed the court that he discussed that the "C" plea was the best possible outcome for Gonzalez:

> I spent a lot of time trying to explain to Mr. Gonzalez the mandatory minimum and that there really are only two -- two potential ways that he could get bailed out, one being cooperation and the other being what we call "safety valve." The -- for reasons I won't get into because of the attorney/[client] privilege, Mr. Gonzalez himself indicated that neither of those were available.

Tr. 11/19/09, 15-17.

Gonzalez himself confirmed that he did not want to cooperate with the government:

4

> [Court interpreter]: He [Gonzalez] says that -- he says that, "I didn't want to cooperate, but I told him about one individual and he told me that wouldn't help me at all. And then I thought" –

Tr. 11/19/09, 18.

Out of an abundance of caution, I decided to appoint new counsel for Gonzalez and told Gonzalez to speak with his new attorney about whether to try to withdraw his plea. On December 3, 2009, I ordered Mr. Levant withdrawn and Kenneth Edelin, Esquire to be appointed to represent Gonzalez. On March 4, 2010, Mr. Edelin filed a Motion to Withdraw Plea of Guilty on behalf of Gonzalez. On April 8, 2010, I held a hearing on Gonzalez's motion. However, rather than proceeding, Gonzalez withdrew his motion to withdraw his plea. Thereafter, at a sentencing hearing on July 19, 2010, I imposed the agreed-upon sentence of 120 months incarceration.

On November 30, 2011, Gonzalez timely filed a petition under 28 U.S.C. § 2255 to vacate, correct, or set aside his sentence.

## II.     STANDARD OF REVIEW

"A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court to vacate, set aside, or correct the sentence." 28 U.S.C. § 2255(a) (2008). If the court determines that the sentence was not authorized by law, was unconstitutional, or otherwise open to collateral attack, the court must either vacate the judgment, resentence the prisoner, or grant the prisoner a new trial as appropriate. Id. at § 2255(b).

### III.   DISCUSSION

The record in the multiple proceedings in Gonzalez's case overwhelmingly reveals that his trial counsel did explain the possibilities for cooperation to Gonzalez, but Gonzalez did not want to cooperate in any way, and at most, he alleges he could have offered evidence about one unnamed individual -- a kind of cooperation that would not satisfy the requirements of the safety valve or the requirements for a cooperation plea with the government.  In his petition, Gonzalez asserts:

>  A. Prior to entering a guilty plea, defense counsel's failure to diligently encourage movant to cooperate in reference to single individual mentioned to his counsel and government certainly prejudiced the movant. Thus, movant was deprived safety-valve provision pursuant to 18 U.S.C. § 3553(f)(1-5) and U.S.S.G. 5C1.2. Absent counsel's grossly incorrect belief that movant would not benefit from the information concerning single individual, coupled with ready information available to the government, movant would have fully benefit[ed] from safety-valve and insisted on guilty plea proceedings.
>
>  B. Movant received ineffective assistance of counsel because he was deprived [of a] downward departure pursuant to 18 U.S.C. § 3553(f)(1-5) and U.S.S.G. 5C1.2. No one offered any explanation in details concerning the differences between a safety-valve eligibility and Rule 35 motion that could be file[d] to move the court for a downward departure.
>
>  C. Defense counsel's failure to correctly advise the movant of [the] difference or differences between requirement (cooperation) to be eligible for safety-valve -- USSG § 5C1.2 qualification and (cooperation) of 5K1.1 or Rule 35 consequences or results of the guilty plea violates the movants Sixth Amendment right to effective assistance of counsel . . .

Gonzalez's argument is flawed because the record in this case shows that trial counsel did explain the possibilities of cooperation to Gonzalez.  Mr. Levant stated, on record, before a hearing on November 19, 2009, that he and Gonzalez discussed the two possible forms of cooperation:

> I spent a lot of time trying to explain to Mr. Gonzalez the mandatory minimum and that there really are only two -- two potential ways that he could get bailed out, one being cooperation and the other being what we call "safety valve." The -- for reasons I won't get into because of the attorney/[client] privilege, Mr. Gonzalez himself indicated that neither of those were available.

Tr. 11/19/09, 15-17.

During this hearing, Gonzalez himself confirmed that he did not want to cooperate with the government:

> [Court interpreter]: He [Gonzalez] says that -- he says that, "I didn't want to cooperate, but I told him about one individual and he told me that wouldn't help me at all." –

Tr. 11/19/09, 18.

Furthermore, Gonzalez acknowledges in his original petition that he did not want to cooperate for either the safety valve relief or for a possible 5K1.1 motion: "From the beginning movant made it clear that he did not want to cooperate with the government or even to proffer with the government concerning this particular incident, and so was ineligible for either 'safety valve' relief or a government motion for a sentence below the mandatory minimum pursuant to 18 U.S.C. § 3553(e)." Doc. No. 168, ¶ 22. Nonetheless, Gonzalez argues that his willingness to cooperate concerning a particular unnamed individual could have made him eligible for a sentence below the mandatory minimum. Gonzalez does not reveal either the individual's identity or the information that he possessed.

Such limited cooperation likely would not have sufficed to qualify Gonzalez for either a safety valve reduction or a cooperation plea agreement. A safety valve reduction

requires that the defendant tell the government everything he knows about the offense of conviction. A cooperation plea agreement requires that the defendant cooperate fully about all matters. In his petition, Gonzalez has not established a sufficient factual basis to qualify for the safety valve or a cooperation plea agreement.

Trial counsel negotiated a Rule 11(c) plea for the mandatory minimum sentence, 120 months. Gonzalez benefited from this "C" plea with the government because it precluded the possibility that his guideline range would be enhanced for his role and assured his sentence would be the minimum permitted by law. Considering the overwhelming evidence the government had in this case, the "C" plea was the best and only possible scenario for Gonzalez.

## IV.   CONCLUSION

For the reasons described above, I find there was no ineffective assistance of counsel and no violation of the defendant's Sixth Amendment rights. Accordingly, I will deny Gonzalez's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.[1]

An appropriate Order follows.

---

[1] There is no probable cause to issue a certificate of appealability because the petitioner has not made a substantial showing of the denial of a constitutional right under 28 U.S.C. § 2253.